STATE v. PARROTT CADE, LACY CADE, LEON CODY, AND
DUBELLE LANGSTON.

(Filed 12 April, 1939.)

**1. Homicide § 30: Criminal Law § 81c—**

The jury's verdict of guilty of murder in the second degree renders immaterial the action of the court in overruling defendant's motion for a directed verdict of "Not guilty" as to the charge of first degree murder.

**2. Same—**

The admission of incompetent opinion evidence relating to the *corpus delicti* cannot be held for reversible error when defendant elicits similar opinions in almost identical language upon cross-examination of the witness, especially when defendant's sole defense is an alibi and he does not challenge the existence of the *corpus delicti* except by his plea of not guilty.

**3. Homicide § 23: Criminal Law § 38—**

The admission of photographs of the body of deceased as it was lying at the spot where it was found, identified by the photographer as taken by him and as being a true picture of the body and the premises before the body was moved, will not be held for error, there being no request that their use be limited or restricted.

**4. Witnesses § 5—**

The competency of a witness of low mentality is for the determination of the court in its discretion, and the court's refusal to strike out such witness' testimony will not be held for error in the absence of abuse of discretion.

**5. Homicide § 25—**

The court's refusal of defendant's request for a directed verdict of "Not guilty" in this prosecution for homicide *is held* not error upon the evidence in the case.

**6. Homicide § 30: Criminal Law § 81c—Inadvertent error on subordinate feature held cured by subsequent correction in the charge.**

The court correctly instructed the jury that defendant's failure to testify in his own behalf should not be considered against him. Thereafter the court, in instructing the jury in the weight to be given the testimony of an interested witness, inadvertently referred to testimony given by defendant, but thereafter corrected this instruction and charged the jury that he meant to refer to testimony of defendant's wife. *Held:* The inadvertent error thus corrected was not prejudicial, nor was it necessary for the court to have repeated the rule governing the consideration of testimony of an interested witness.

APPEAL by defendant Parrott Cade from *Stevens, J.,* at January Term, 1939, of LENOIR.

Criminal indictment in which the defendants were charged with the capital felony of murder of one Noah Rouse.

The defendant, Dubelle Langston, tendered a plea of guilty as an accessory before the fact to first degree murder, which was accepted by the State. The defendant, Leon Cody, entered a plea of guilty of murder in the second degree. It is also stated in the brief of the defendant that the defendant, Lacy Cade, during the progress of the trial, likewise entered a plea of guilty of murder in the second degree. The cause was submitted to the jury only as to the appealing defendant.

The body of the deceased was found on Wednesday, 21 November, in the woods about 250 yards back of his shop. An examination disclosed that he had received a wound on the left side of the head that was of the depth of one finger and the width of two fingers. This wound was sufficient to have caused death. There was also a gunshot wound through his left kidney, penetrating his heart.

The evidence for the State tended to show that Langston and Lacy Cade stopped at the shop of the deceased for a drink of whiskey on Saturday, 19 November; that they purchased several drinks and were shooting dice for a nickel; that Parrott Cade and Leon Cody came into the room while the others were shooting dice; that Parrott Cade and the deceased got into an argument about a coat belonging to the deceased, which Parrott Cade had pawned and which he would not return to the deceased, and that Parrott Cade and the deceased became very angry. One of the dice rolled off the table and dropped on the floor. The deceased reached down to pick it up and as he raised up Lacy Cade struck him over the head with an axe. Parrott Cade then, at the point of a pistol, forced Langston to give Cody a gun sitting by the door. Langston testified that he then ran off. The defendants then took the body of the deceased and carried it into the woods where it was later found. There Parrott Cade, with a drawn pistol, forced Leon Cody to shoot the deceased with a shotgun. Cody testified that after they had carried the deceased to the woods he raised up and groaned and that was the time that he shot. After Cody shot the deceased Parrott Cade had Lacy Cade to search his pockets. They found something less than $300.00. This defendant tore up a check so his finger prints would not be found. There was evidence Parrott Cade and Cody were together when they went to the home of the deceased. On the way Cade insisted that Cody drink some liquor and stated to him: "You must, because we are going to kill or be killed." There was also evidence that this defendant had theretofore planned to rob the deceased.

There was a verdict of guilty of murder in the second degree. From judgment thereon defendant Parrott Cade appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Wettach for the State.*
*S. H. Newberry for defendant, appellant.*

BARNHILL, J.   While there was conflicting evidence and evidence tending to contradict the statements of some of the State's witnesses, when considered in the light most favorable to the State, it was sufficient to be submitted to the jury.   In recognition of this fact counsel for the defendant made no motion to dismiss as of nonsuit when the State rested. Instead he made a motion for a directed verdict of "Not guilty" as to the charge of first degree murder.   As the jury returned a verdict of guilty of murder in the second degree, exception to the action of the court in overruling this motion becomes immaterial.

The coroner who examined the body at the place where it was found was examined as a witness.   There are exceptions to parts of his testimony.   Some of the statements of this witness were clearly expressions of opinion which were not admissible as expert testimony, such as: "He was evidently carried up the road and probably put down where the keys and fountain pen were found."   "He was shot after he was laid out to be sure he was dead."   "I presume that he was knocked down and shot thereafter."   "I think he was then carried up in the woods and shot." On cross-examination the defendant elicited from this witness similar opinions in almost identical language.   The repetitions were not excepted to, but were made in response to questions by counsel for the defendant. Under these circumstances the admission of the statements of the witness which were the subject of objection and exception by the defendant cannot be held for error.   In any event, the defendant's sole defense was based upon a plea of alibi, which he undertook to establish through the testimony of a number of witnesses.   While the burden was on the State to establish the *corpus delicti* the defendant did not challenge the existence thereof except by his plea of not guilty.   His contention was that he did not participate in said crime and he undertook to show the impossibility of his participation by evidence that he was elsewhere at the time.   *S. v. Vick,* 213 N. C., 235, 195 S. E., 779; *S. v. Church,* 192 N. C., 658, 135 S. E., 769; *S. v. White,* 171 N. C., 785, 87 S. E., 984.

The defendant excepts to the admission of photographs of the body taken as he was found lying in the woods.   This exception cannot be sustained.   The photographer testified that he took the pictures of the deceased at the spot where deceased was found and that they correctly presented a true picture of the deceased and the premises where he was found before the body was moved.   The evidence merely shows that the photographs were exhibited to the jury and there was no request that their use be limited or restricted.

There was evidence that the witness Leon Cody was a person of low mentality and had theretofore been confined in the insane asylum. There was further evidence that he knew right from wrong, and that he had the mentality of a child varying in age from 7½ years to 16 or 17 years. The defendant assigns as error the refusal of the court below to strike the testimony of this witness. The jury heard the testimony as to his mental condition and the court in its charge fully stated the defendant's contention that he was of such mentality that his testimony should not be given any weight or considered adversely to the defendant. Conceding that the witness was of low mentality, it was discretionary with the court as to whether it would permit him to testify. We can find nothing in the record that tends to show any abuse of this discretion.

At the conclusion of all the evidence the defendant requested a directed verdict of "Not guilty" as charged in the bill of indictment. The court properly declined to so instruct the jury.

There are likewise a number of exceptive assignments of error directed to portions of the charge. The court, in charging the jury as to how they should weigh and consider the testimony of an interested witness to determine what weight, if any, they would give such testimony, inadvertently referred to the defendant rather than to the defendant's wife. It had, therefore, called the attention of the jury to the fact that the defendant did not testify; that he was presumed to be innocent and had a constitutional right to rely upon what he conceived to be the weakness of the State's case; that his failure to testify was not a circumstance tending to show guilt and was not to be considered by the jury in any manner adversely to the defendant; and that the burden was on the State to satisfy the jury of his guilt beyond a reasonable doubt. It corrected the erroneous reference to the defendant and instructed the jury that it meant to refer to the defendant's wife, who had testified. It was not necessary for the court to repeat the rule governing the consideration of the testimony of interested witnesses. Men of average intelligence could understand what he had said and comprehend the correction he had made. We do not consider that the mere inadvertent reference to the defendant, thus corrected, could be held for reversible error.

We have examined the other exceptive assignments of error and find in them no sufficient merit to require a new trial.

No error.