STATE OF NORTH CAROLINA v. MICHAEL ANTHONY MAYHAND

No. 16

(Filed 6 November 1979)

1. Rape § 4; Criminal Law § 45.1— demonstration depicting manner in which rape occurred—no prejudice

The trial court in a rape prosecution did not err in permitting a demonstration by the prosecuting witness and a detective depicting the manner in which the rape took place, even though the demonstrative evidence was of limited value because the prosecuting witness had testified as to the manner in which penetration occurred, since there was no evidence that the pros-

State v. Mayhand

ecutrix participated in the demonstration unwillingly or was embarrassed by the reenactment, and the demonstration did not create an emotionally charged atmosphere in the courtroom.

**2. Criminal Law § 63— defendant's mental capacity—testimony by lay witnesses**

The trial court in a rape case did not err in allowing two lay witnesses who were police officers to testify concerning defendant's mental capacity where one officer observed defendant for approximately 45 minutes both before and after the arrest and spoke with defendant both in the police car and later at the police station, and the second officer, who was the correctional officer in charge of the prison unit in which defendant had been confined for a prior offense, observed defendant for approximately five months prior to the rape.

**3. Criminal Law § 89.2— corroborating testimony—slight variations permissible**

The trial court in a prosecution for rape and assault with intent to rape did not err in permittng the rape victim's school teacher to testify that the victim had told her that she had been raped, nor did the court err in permitting an officer to testify that the assault victim was extremely upset and that the victim said she had heard her assailant unzip his pants, since such testimony was properly admitted for corroboration and contained only slight variations from the original statements of the prosecuting witnesses.

**4. Criminal Law § 42.2— tests performed on clothing and hair—no foundation laid for evidence**

The trial court in a rape prosecution properly excluded evidence concerning tests performed by the FBI on clothing, hair combings and cuttings obtained from defendant and the prosecuting witnesses since there was no testimony by any person actually involved in conducting the tests and the FBI report was therefore without foundation and was correctly excluded as hearsay.

**5. Criminal Law § 86.1— prior convictions and misconduct—cross-examination for impeachment**

Cross-examination of defendant concerning prior cases in which defendant had been convicted and represented by counsel and concerning prior specific acts of misconduct by defendant was properly allowed for impeachment purposes.

**6. Criminal Law § 169; Rape § 4— learning disability of rape victim—irrelevant evidence—admission not prejudicial**

Though the trial court in a rape case erred in allowing the testimony of a witness, who was a teacher of exceptional children, concerning the prosecuting witness being an exceptional student in that she had a learning disability, such error was not prejudicial to defendant.

**7. Criminal Law § 82.2— examination of criminal defendant by psychiatrist—no physician-patient privilege**

No privileged relationship arises where a psychiatrist examines a criminal defendant for the sole purpose of passing upon his ability to proceed to trial.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by defendant from *Albright, J.*, 30 October 1978 Criminal Session of GUILFORD Superior Court, Greensboro Division.

Defendant was charged in separate bills of indictment with the second degree rape of Judy Ann Davis and with assault with intent to commit rape upon Jill Elizabeth Utter. He entered pleas of not guilty and not guilty by reason of insanity to each charge. The cases were consolidated for trial.

The State's evidence tended to show that on 16 May 1978 defendant, an inmate of McLeansville Prison Unit, was taken with other prisoners to a track meet at Grimsley High School in Greensboro, North Carolina.

Brian Keith Morgan, one of the prisoners, testified that defendant consumed from a quart to a quart and a half of wine during the day. He and defendant left the stadium and entered the school building. After a short time, the witness departed leaving defendant inside the building.

Judy Ann Davis, a 16 year old student at Grimsley High School, testified that at about 2:25 p.m. on 16 May 1978, she left her classroom to go to a girls restroom located two doors away. Defendant entered the bathroom but left when she told him he was in the wrong bathroom. When she started to leave, defendant blocked the door, grabbed her by the neck and forced her into one of the stalls. She initially resisted defendant's efforts to remove her clothes but complied when he threatened to kill her. After she was disrobed, defendant forced her against the wall and unsuccessfully tried to penetrate her from the rear. After turning her around and again failing in his efforts to penetrate, defendant sat on the commode and forced her to sit on top of him. The witness stated, "I felt his penis in my vagina." She further testified that when a maid came into the restroom, defendant released her and left. Miss Davis immediately reported the assault to her teacher, Ms. Judy Hall, and later gave a statement to the police. On cross-examination, the witness admitted that on 22 June 1978 she testified at a probable cause hearing that no penetration occurred.

Ms. Judy Hall, testifying in corroboration of the prosecuting witness, stated that immediately after the assault Judy told her that penetration had occurred.

State v. Mayhand

Jill Elizabeth Utter, a 15 year old student at Grimsley High School, testified that on 16 May 1978 she left her classroom to go to a nearby restroom. In the hallway, she saw defendant who followed her into the restroom, grabbed her by the arms and threatened to kill her if she screamed. He undressed her and fondled her person, but she managed to escape on the pretext of having to go to the bathroom. The witness gave a complete statement including a description of her assailant to Dorothy Kimel of the Greensboro Police Department.

Police Officer T. P. Dolinger testified that at about 3:00 p.m. on 16 May 1978, he received a call to go to Grimsley High School and be on the lookout for a black male of a certain description who was suspected of rape. He proceeded to the student parking lot of Grimsley High School where he observed defendant who matched the description furnished to him. Defendant's belt was unbuckled and his pants were unzipped. He arrested defendant, advised him of his rights and took him to the Greensboro Police Department.

Defendant offered evidence and testified in his own behalf. He stated that it was not he but Satan, or rather Satan in possession of his body, who went into the restrooms and touched the two girls. He remembered seeing the two girls in a vision, but he denied that either he or Satan had intercourse with either of the girls. Defendant also offered the testimony of Mr. Robert Gray, an investigator hired for his defense, his mother and father who each testified that in his or her opinion defendant was unable to distinguish right from wrong on 16 May 1978. Police Officer T. P. Dolinger upon being recalled by defendant stated that in his opinion defendant knew right from wrong on that date.

In rebuttal the State offered the testimony of Dr. Billy W. Royal, an expert in the field of psychiatry, who stated that in his opinion defendant knew right from wrong on 16 May 1978. Also on rebuttal, Mr. Gregory L. Martin, a correctional officer at the McLeansville Unit, testified that in his opinion defendant was capable of knowing right from wrong on that date.

The jury returned verdicts of guilty of second degree rape and guilty of assault with intent to commit rape. Defendant appealed from judgments imposing a sentence of life imprisonment on the rape charge and a consecutive sentence of imprisonment

for twelve to fifteen years on the charge of assault with intent to commit rape. On 15 May 1979, we allowed defendant's motion for certification prior to determination by the Court of Appeals on the charge of assault with intent to commit rape.

*Rufus L. Edmisten, Attorney General, by Grayson G. Kelley, Associate Attorney, for the State.*

*Wallace C. Harrelson for defendant appellant.*

BRANCH, Chief Justice.

[1] Defendant first contends that the trial judge erred in permitting a demonstration by the prosecuting witness and a detective depicting the manner in which the rape took place. During her testimony, Miss Davis was allowed to sit in the lap of a police detective who was sitting in an armchair so as to illustrate the relative positions of the parties at the time the rape occurred.

The law is well settled in this jurisdiction that experimental or demonstrative evidence is admissible when performed under circumstances substantially similar to those existing at the time of the original transaction if the evidence tends to shed light on that transaction. The conditions need not be identical, but a reasonable or substantial similarity is sufficient. *State v. Brown,* 280 N.C. 588, 187 S.E. 2d 85 (1972); *Mintz v. R.R.,* 236 N.C. 109, 72 S.E. 2d 38 (1952); *State v. Phillips,* 228 N.C. 595, 46 S.E. 2d 720 (1948). The measure of permissible variation in the conditions of the experiment from those of the original transaction is usually determined by whether such variation would tend to confuse or mislead the jury. If the evidence would tend to enable the jury to consider more intelligently the issues presented and arrive at the truth, it is admissible. *State v. Jones,* 287 N.C. 84, 214 S.E. 2d 24 (1975); *State v. Phillips, supra.*

Relevant evidence will not be excluded simply because it may tend to prejudice the accused or tend to excite sympathy for the cause of the party who offers it. Yet if the only effect of the evidence is to excite prejudice or sympathy, its admission may be ground for a new trial. 1 Stansbury's N.C. Evidence § 80 (Brandis rev. 1973); *State v. Gaskins,* 252 N.C. 46, 112 S.E. 2d 745 (1960); *State v. Wall,* 243 N.C. 238, 90 S.E. 2d 383 (1955).

The trial court has broad discretion in the admission of demonstrative evidence, especially as to the similarity of conditions surrounding the crime and those surrounding the experiment, *State v. Carter*, 282 N.C. 297, 192 S.E. 2d 279 (1972), and the court's rulings thereon will not be interfered with on appeal unless an abuse of discretion is clearly shown. *State v. Jones, supra; State v. McLamb*, 203 N.C. 442, 166 S.E. 507 (1932).

In the instant case, it is the State's position that since the question of penetration was at issue, the demonstration was relevant and of probative value because it tended to show that penetration could have occurred from the demonstrated positions. On the other hand, defendant contends that the probative value of the demonstration was heavily outweighed by the resulting prejudice to defendant and that the trial judge abused his discretion by permitting the demonstration.

In support of his position, defendant relies on *Commonwealth v. Morgan*, 358 Pa. 607, 58 A. 2d 330 (1948). There the trial judge permitted the district attorney to conduct a demonstration in which the sobbing witness climbed onto a table and demonstrated the position in which she had been raped. The defendant objected on the grounds that the demonstration did not fairly reproduce the conditions that had existed and was highly inflammatory. The Supreme Court of Pennsylvania reversed holding that the demonstration was totally unnecessary, that it created an atmosphere of emotion unsuited to the courtroom, that it was unfair to the prosecuting witness to compel her to submit to such indignity, and that allowing such practices would make rape victims more reluctant to report their assaults.

*Morgan* and the case *sub judice* are distinguishable. In *Morgan* the sobbing witness was, without warning, compelled to reenact her posture at the time of the rape. Here there is no evidence that Ms. Davis participated in the demonstration unwillingly or was embarrased by the reenactment. Neither can we say from an examination of this record that the demonstration created an emotionally charged atmosphere in the courtroom.

Admittedly, the demonstrative evidence in the instant case was of limited probative value since the prosecuting witness had testified as to the manner in which penetration occurred. We are of the opinion that the chief victim of this demonstration was the

dignity of the court. Ordinarily, we do not approve of such un-dignified displays unless they clearly aid the jury in its search for the truth. However, under the facts of this case, we are unable to discern any prejudice to defendant.

This assignment of error is overruled.

[2] By his second assignment of error, defendant contends that the trial judge erred in allowing two lay witnesses to testify as to his mental capacity. Defendant avers that neither of these witnesses had a reasonable opportunity to form such an opinion based on their observation of defendant.

In the case *In re Will of Brown,* 203 N.C. 347, 166 S.E. 72 (1932), Chief Justice Stacy concisely stated the applicable law when he wrote:

> Anyone who has observed another, or conversed with him, or had dealings with him, and a reasonable opportunity, based thereon, of forming an opinion, satisfactory to himself, as to the mental condition of such person, is permitted to give his opinion in evidence upon the issue of mental capaci-ty, although the witness be not a psychiatrist or expert in mental disorders. [Citations omitted.]

*Id.* at 350, 166 S.E. at 74; *State v. Brower,* 289 N.C. 644, 224 S.E. 2d 551 (1976); *Moore v. Insurance Co.,* 266 N.C. 440, 146 S.E. 2d 492 (1966).

The test of insanity as a defense to a criminal charge is whether defendant had the capacity to distinguish between right and wrong at the time of and in respect to the matter under in-vestigation. *State v. Cooper,* 286 N.C. 549, 213 S.E. 2d 305 (1975); *State v. Jones,* 278 N.C. 259, 179 S.E. 2d 433 (1971). However, evidence of the party's mental condition before and after the com-mission of the offense is competent, provided the time is not too remote to warrant an inference that the same condition existed at the time of the offense. 1 Stanbury's N. C. Evidence § 127 (Bran-dis rev. 1973), text accompanying nn. 79 & 80 and cases cited therein; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), *rev'd as to death penalty,* 403 U.S 948 (1971); *State v. Duncan,* 244 N.C. 374, 93 S.E. 2d 421 (1956).

Here, Officer Dolinger observed defendant for approximately forty-five minutes both before and after the arrest and spoke with defendant both in the police car and later at the police station. Officer Martin, the correctional officer in charge of defendant's unit at McLeansville Prison, observed defendant for approximately five months prior to the rape. There was ample evidence to support the trial judge's finding that each of the officers had a reasonable opportunity to form an opinion as to defendant's mental condition. Nor was the time of Officer Martin's observation too remote to require exclusion by the trial judge.

[3] Defendant next assigns as error the admission of certain testimony allowed for the purpose of corroborating the testimony of the prosecuting witnesses.

When the credibility of a witness has been impugned in any way, prior consistent statements are admissible to strengthen his credibility. *State v. Madden*, 292 N.C. 114, 232 S.E. 2d 656 (1977); *Brown v. Loftis*, 226 N.C. 762, 40 S.E. 2d 421 (1946); *Jones v. Jones*, 80 N.C. 246 (1879). Such statements, however, are admitted only when they are in fact consistent with the witness's testimony. *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977); *State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975), *death sentence vacated*, 428 U.S. 904 (1976); *State v. Bagley*, 229 N.C. 723, 51 S.E. 2d 298 (1949). "If a prior statement of a witness, offered in corroboration of his testimony at the trial, contains additional evidence going beyond his testimony, the State is not entitled to introduce this 'new' evidence under a claim of corroboration." *State v. Madden, supra; State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354 (1963). Nevertheless, if the testimony offered in corroboration is generally consistent with the witness's testimony, slight variations between them will not render the statements inadmissible. Such variations affect only the credibility of the evidence which is always for the jury. *State v. Warren*, 289 N.C. 551, 223 S.E. 2d 317 (1976); *State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972), *cert. den.*, 410 U.S. 958, 987 (1973); *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429 (1960), *cert. den.*, 365 U.S. 830 (1961).

Defendant in the instant case first objects to the corroborative testimony of Miss Davis's teacher, Judy A. Hall, who stated that Miss Davis had told her that she had been "raped," on

the grounds that Miss Davis had not used that exact language in testifying. Defendant also contends that Officer Dorothy Kimel should not have been allowed to testify that Miss Utter was extremely upset, and that Miss Utter said she had heard her assailant at one point unzip his pants. When compared to the original testimony of the prosecuting witnesses, however, it is clear that the trial judge did not err in so ruling. He properly instructed the jury that the testimony was not substantive evidence but rather was admitted for the limited purpose of corroboration. The corroborative testimony, containing only slight variations from the original statements of the prosecuting witnesses, was properly admitted for that limited purpose.

[4] Defendant next assigns as error the exclusion of evidence concerning tests performed by the Federal Bureau of Investigation on clothing, hair combings and cuttings obtained from defendant and the prosecuting witnesses. Defendant cross-examined Detective Allen G. Travis of the Greensboro Police Department, who sent the items to the F.B.I. laboratory in Washington, D.C. for analysis. Defendant attempted unsuccessfully to introduce the results of such tests and the F.B.I. report for the purpose of showing that no hairs from defendant were found on the witnesses' clothing. There was no testimony by any person actually involved in conducting the tests.

It is true that scientific tests conducted on the hairs of a criminal defendant have been admitted in many cases as relevant to and probative of the issue of identification. *State v. Shaw,* 293 N.C. 616, 239 S.E. 2d 439 (1977); *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972); *State v. Dickens,* 278 N.C. 537, 180 S.E. 2d 844 (1971). However, the results of such tests are competent only when shown to be reliable and where a proper foundation has been laid. *State v. Gray,* 292 N.C. 270, 233 S.E. 2d 905 (1977); *State v. Crowder,* 285 N.C. 42, 203 S.E. 2d 38 (1974), *death sentence vacated,* 428 U.S. 903 (1976).

Here, the report was without proper foundation and was, therefore, correctly excluded as hearsay.

[5] Defendant also contends that the trial judge erred in allowing the district attorney to conduct an improper cross-examination of defendant. Defendant objects primarily to the

State's questions concerning defendant's prior convictions and bad acts, asked for the purpose of impeaching his credibility.

In *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972), this Court discussed the applicable law:

> It has long been the rule that where a defendant in a criminal case testifies in his own behalf, specific acts of misconduct may be brought out on cross-examination to impeach his testimony. [Citations omitted.] Such cross-examination for the purpose of impeachment *is not limited to conviction of crimes.* Any act of the witness which tends to impeach his character may be inquired about or proven by cross-examination. [Citations omitted.]
>
> Although a defendant may not be asked if he has been accused, arrested or indicted for a particular crime, [Citation omitted], he may be asked if he in fact committed the crime . . . . [Citations omitted.] Of course, such questions must be asked in good faith, [Citations omitted].

*Id.* at 341-42, 193 S.E. 2d at 76. *See also State v. Gainey,* 280 N.C. 366, 185 S.E. 2d 874 (1972); *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971). Nevertheless, the trial judge has wide discretion over the scope of such cross-examination, and his rulings should not be disturbed except when prejudicial error is disclosed. *State v. Black,* 283 N.C. 344, 196 S.E. 2d 225 (1973); *State v. Stone,* 226 N.C. 97, 36 S.E. 2d 704 (1946); *State v. Wray,* 217 N.C. 167, 7 S.E. 2d 468 (1940).

In the instant case, the trial judge excused the jury and conducted a voir dire hearing to determine whether the district attorney would be permitted to cross-examine defendant regarding prior convictions for purposes of impeachment. The judge, after an examination of defendant's criminal record, designated the cases in which defendant had been convicted and represented by counsel at the time of said convictions. Thereafter, the district attorney confined his questions to prior convictions and prior, specific acts of misconduct by defendant. We hold that such cross-examination did not constitute error.

[6] Defendant argues that the trial judge erred in allowing the testimony of Judy Hall, a teacher of exceptional children, concern-

ing Miss Davis being an exceptional student in that she had a learning disability.

Regarding the relevance of such evidence, this Court has held that "[i]t is not required that the evidence bear directly on the question in issue, and it is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known to properly understand their conduct or motives, or to weigh the reasonableness of their contentions." *Jones v. Hester*, 260 N.C. 264, 132 S.E. 2d 586 (1963); *Farmers' Federation, Inc. v. Morris*, 223 N.C. 467, 27 S.E. 2d 80 (1943); *Bank v. Stack*, 179 N.C. 514, 103 S.E. 6 (1920). Relevant evidence will not be excluded simply because it may tend to prejudice the accused or excite sympathy for the cause of the party who offers it. On the other hand, if the only effect of the evidence is to excite prejudice or sympathy, its admission may be ground for a new trial. *State v. Wall, supra;* 1 Stansbury's N. C. Evidence § 80 (Brandis rev. 1973), and cases cited therein. Ordinarily, the admission of irrelevant evidence constitutes harmless error, absent a showing of substantial prejudice. *State v. Cogdale*, 227 N.C. 59, 40 S.E. 2d 467 (1946).

Here, the fact that Ms. Hall was Miss Davis's teacher was relevant to qualify Ms. Hall and lay a proper foundation for her corroborative testimony concerning the rape. However, the district attorney's questions concerning whether Miss Davis was an exceptional student and the nature of her specific problems were irrelevant. Although it was error to admit this evidence, its weight and prejudicial effect was so minimal that it would not warrant disturbing the verdict and judgment entered.

[7] Defendant finally contends that the trial judge erred in admitting the testimony of Dr. Billy W. Royal. Dr. Royal, a psychiatrist at Dorothea Dix Hospital, was appointed by the court to determine the defendant's capacity to proceed to trial pursuant to G.S. 15A-1002(b)(1). Defendant contends that the court's ruling permitting Dr. Royal to testify at trial as to defendant's ability to distinguish between right and wrong at the time of the rape violated the physician-patient privilege.

The privilege protecting communications between physician and patient in North Carolina is controlled by G.S. 8-53 (Supp. 1977), which states:

State v. Mayhand

> No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon. Confidential information obtained in medical records shall be furnished only on the authorization of the patient . . . provided, that the court, either at the trial or prior thereto . . . may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice.

This privilege has long been construed by this Court to extend only to those cases in which the physician and patient relationship existed at the time of the communication and where the information given was necessary for diagnosis or treatment. *State v. Hollingsworth*, 263 N.C. 158, 139 S.E. 2d 235 (1964); *Sims v. Insurance Co.*, 257 N.C. 32, 125 S.E. 2d 326 (1962); *State v. Wade*, 197 N.C. 571, 150 S.E. 32 (1929). Moreover, the statutory privilege is a qualified one, and the judge may compel disclosure by the physician if he finds, in his discretion, that it is necessary for the proper administration of justice. *State v. Newsome*, 195 N.C. 552, 143 S.E. 187 (1928); 1 Stansbury's N.C. Evidence § 63 (Brandis rev. 1973).

In *State v. Newsome, supra,* this Court held that no privileged relationship arose where a physician examined a criminal defendant for the sole purpose of passing upon his ability to proceed to trial. We hold that the same rule applies here and renders Dr. Royal's testimony admissible because no privileged relationship was ever created.

We have carefully considered the entire record and find no error warranting a new trial.

No error.

Justice BROCK did not participate in the consideration or decision of this case.