STATE OF NORTH CAROLINA v. JAMES WILLIAM RUPARD

No. 7

(Filed 5 March 1980)

1. **Homicide § 20.1— photographs of victims' bodies—admission for illustrative purposes**

   Photographs of the bodies of two murder victims taken at the crime scene and at the office of the Chief Medical Examiner in Chapel Hill were properly admitted for the purpose of illustrating testimony of a medical expert as to the nature of the entry and exit wounds which he found, the bullet fragments he recovered from the bodies, and the cause of death of each victim.

2. **Criminal Law § 102.6— improper remark by prosecutor—curative instruction—absence of prejudice**

   The prosecutor's remark in his jury argument that "The attorneys for the defendant, I would argue were tied to this story that the defendant told" was not sufficiently grave or prejudicial to warrant a new trial, and any impropriety was cured by the trial court's instruction that the jury should disregard such remark.

3. **Criminal Law § 134.4— youthful offender—failure to make "no benefit" finding**

   The trial court erred in sentencing a 17 year old defendant to consecutive terms of life imprisonment for second degree murder without making a finding that defendant should not obtain the benefit of release as a committed youthful offender under G.S. 148-49.15, and the cause is remanded for resentencing after a finding of record as to whether defendant should or should not obtain the benefit of release under G.S. 148-49.15. G.S. 148-49.14.

APPEAL by defendant from *Johnson, J.,* 2 April 1979 Criminal Session of AVERY Superior Court.

Defendant was charged in bills of indictment proper in form with the murders of Lester Rupard and Ruth Rupard. Defendant was arraigned on charges of second-degree murder and entered pleas of not guilty to both charges. The cases were consolidated for trial.

The State offered evidence tending to show that on 25 September 1978, four men were working approximately 900 feet from the residence of Lester and Ruth Rupard. At approximately 10:00 a.m. they observed two men running from the front door of the Rupard residence. The man in the rear carried a rifle and appeared to be chasing the man in front. The witnesses observed that when the man in front turned to face his assailant, the assailant fired two shots. Witnesses testified that the man with the rifle appeared to be wearing a robe. A short while later, officers from the Sheriff's Department arrived at the Rupard residence. The dead body of Lester Rupard was found in the yard; Ruth Rupard's body was found in the bedroom.

The officers found the defendant at a nearby house lying on the couch. The officers questioned defendant concerning the shooting, and specifically asked, "Why did you shoot your parents?" Defendant replied that they were too strict, that they were going to make him go back to school, and that he hated school.

Defendant also told the officers that he had thrown a gun into a pond behind the Rupard residence. Upon searching the pond, the officers found a 30-30 rifle and a .22 caliber pistol. Evidence for the State tended to show that Ruth Rupard died as a result of five gunshot wounds inflicted by a .22 caliber pistol, and that Lester Rupard died as a result of a gunshot wound in the back of his head inflicted by a high caliber rifle.

Defendant offered evidence which tended to show that he had been ill for the entire weekend prior to the death of his parents, and that he was also ill on the morning of the shootings. He testified that at around 9:00 that morning he lay down on the sofa in the den and did not remember anything further until later when he was running through the yard with a gun in his hand. Defendant testified that he threw the gun into a pond and ran to a neighbor's house. He told the neighbor that someone was shooting at his parents. Defendant denied any knowledge or memory of the events transpiring at the time of the shootings. One of defendant's witnesses testified that he was approximately 900 feet from the Rupard residence at the time of the shootings, and that he observed two persons running from the house. He testified, however, that the second person was a woman. He fur-

ther testified that the shots appeared to come from a trailer at the rear of the Rupard residence.

The jury returned verdicts of guilty on both charges of murder in the second degree. Defendant appealed from judgments imposing consecutive life sentences.

*Rufus L. Edmisten, Attorney General, by Thomas H. Davis, Assistant Attorney General, for the State.*

*Hise & Harrison, by Lloyd Hise, Jr., for defendant.*

BRANCH, Chief Justice.

[1] Defendant first assigns as error the admission into evidence of certain photographs of the dead bodies of Lester and Ruth Rupard. Defendant contends that the photographs had no probative value and served only to inflame the jury.

If a photograph is relevant and material, and is competent to illustrate the testimony of a witness, it is not rendered inadmissible solely because it is gory or gruesome or otherwise may tend to arouse prejudice. *See generally* 1 Stansbury's North Carolina Evidence, § 34 (Brandis Rev. 1973). If, however, a photograph has no probative value but tends solely to inflame, it must be excluded. *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963).

The photographs to which defendant objects were taken at the scene of the crime and at the Office of the Chief Medical Examiner in Chapel Hill, North Carolina. The photographs were introduced during the testimony of Dr. C. Bruce Alexander, Assistant Chief Medical Examiner for the State of North Carolina, and were in fact used by him to explain to the jury the nature of the entry and exit wounds which he found, the bullet fragments he recovered from the bodies, and the cause of death for each victim.

Defendant did not request an instruction limiting the use of the photographs for illustrative purposes; and, therefore, the trial judge's failure to give the instruction was not error. *State v. Cade*, 215 N.C. 393, 2 S.E. 2d 7 (1939).

The photographs were properly authenticated and were relevant for the purpose of showing the cause of decedents' deaths.

We hold that the photographs were properly admitted into evidence for the purpose of illustrating the testimony of Dr. Alexander.

[2] Defendant next assigns as error the following statement, made by the District Attorney during his closing argument:

> I feel like in this case that the State has evidence and has presented evidence that should convince you beyond a reasonable doubt, I like to call it a common sense doubt, beyond a reasonable doubt that the defendant is guilty as charged. The attorneys for the defendant, I would argue were tied to this story that the defendant told—

Defendant objected to the statement, and the trial court sustained the objection. The court then instructed the jury to disregard the District Attorney's last remark. Defendant contends that the statement amounts to an accusation that defendant and his attorneys had conspired to present perjured testimony and to invent a defense. Defendant submits that the statement was highly prejudicial and warrants a new trial.

As a general rule, wide latitude is permitted counsel in their arguments to the jury. *State v. Maynor*, 272 N.C. 524, 158 S.E. 2d 612 (1968); *State v. Barefoot*, 241 N.C. 650, 86 S.E. 2d 424 (1955). The control of the arguments must be left largely to the discretion of the trial judge. *Id.* He "hears the argument, knows the atmosphere of the trial and has the duty to keep the argument within proper bounds." *State v. Maynor, supra*, at 526, 158 S.E. 2d at 613. An impropriety must be sufficiently grave to entitle defendant to a new trial. *See State v. Seipel*, 252 N.C. 335, 113 S.E. 2d 432 (1960) (per curiam), and where, upon defendant's objection to an improper remark of the prosecutor, the court instructs the jury not to consider the statement, the impropriety is ordinarily cured. *State v. Best*, 265 N.C. 477, 144 S.E. 2d 416 (1965).

We hold that the prosecutor's remarks were not sufficiently grave or prejudicial to warrant a new trial, and, in any event any impropriety was cured by the trial court's instructions to the jury.

[3] Defendant contends finally that the trial court erred in sentencing defendant to consecutive terms of life imprisonment without making a "no benefit" finding as required by G.S.

148-49.14. That statute in pertinent part provides that "if the court shall find that a person under 21 years of age should not obtain the benefit of release under G.S. 148-49.15, it shall make such 'no benefit' finding on the record." It is uncontradicted here that defendant was seventeen years old. Defendant thus contends that the case must be remanded for resentencing. We agree. The statutory language is clear in its requirement of a "no benefit" finding, and the trial court erred in not making the finding.

We have considered all of defendant's assignments of error, and our careful consideration of the entire record discloses that defendant received a fair trial free from prejudicial error. However, because the court failed to enter a finding of "no benefit" as required by G.S. 148-49.14, the judgment is vacated and the cause is remanded to the Suprerior Court of Avery County for resentencing after a finding of record as to whether defendant should or should not obtain the benefit of release under G.S. 148-49.15.

No error in trial.

Judgment vacated and remanded for resentencing.