J. FLOYD WILLIAMS AND WIFE, VARA BULLARD WILLIAMS v. BETHANY VOLUNTEER FIRE DEPARTMENT AND BENNY PLATO BULLARD

No. 8112SC743

(Filed 4 May 1982)

Automobiles and Other Vehicles § 45— accident between automobile and fire truck —error to allow a jury "hearing" of fire truck's siren

In a negligence action arising out of a collision between an automobile owned by plaintiff and a fire truck owned by defendant, the trial court erred in allowing a jury "hearing" of a fire truck's siren where the conditions under which the demonstration was conducted were substantially different from the conditions which existed at the place of the collision.

APPEAL by plaintiffs from *Clark, Judge.* Judgment entered 6 February 1981 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 12 March 1982.

This is a negligence action arising out of a collision between an automobile owned and operated by plaintiff J. Floyd Williams [hereinafter referred to as plaintiff] and a fire truck owned by defendant Bethany Volunteer Fire Department [hereinafter referred to as defendant fire department] and operated by defendant Benny Plato Bullard [hereinafter referred to as defendant Bullard]. In his complaint, plaintiff alleged that defendant Bullard was negligent in failing to keep a proper lookout, failing to keep the fire truck under proper control, failing to stop at a stop sign

and failing to yield the right-of-way to plaintiff's vehicle on the dominant highway, and speeding; such negligence being imputed to defendant fire department. Plaintiff prayed to recover for damages to the automobile and for his injuries. Defendants denied negligence and alleged that plaintiff was contributorily negligent in driving at an excessive speed under the circumstances and in failing to yield the right-of-way to an approaching fire department vehicle. Defendants also counterclaimed to recover for damages to the fire truck.

Vara Bullard Williams, plaintiff's wife, later filed a separate action in which she alleged loss of consortium and upon motion, was joined as a party plaintiff. Defendants denied her allegations.

The jury found that defendants were not negligent and that defendant fire department was not damaged by plaintiff's negligence. Vara Bullard Williams and plaintiff appeal from the judgment entered on this verdict.

*Anderson, Broadfoot, Anderson, Johnson & Anderson, by Henry L. Anderson, Jr., for plaintiff-appellants.*

*Johnson, Patterson, Dilthey & Clay, by Robert M. Clay and Robert W. Sumner, for defendant-appellees.*

HILL, Judge.

Plaintiff's evidence tends to show that on the morning of 29 January 1980, he got a haircut, and on his way home intended to see a friend who lives beyond the intersection of Rural Paved Road 1006 and Rural Paved Road 1826. Rural Paved Road 1006 runs North and South; Rural Paved Road 1826 runs East and West. A stop sign is located at the intersection on Rural Paved Road 1826. Visibility from the South down Rural Paved Road 1006 is obstructed by a house, trees, and shrubs. Plaintiff testified as follows:

> As I approached the intersection, I was probably 75 foot from the intersection, and I saw the fire truck coming from the right, probably 60 foot down the road from the intersection. The speed of my car approaching the intersection was somewheres from 42 or 3 miles per hour. I was decreasing my speed as I approached the intersection because I was going to stop at my friend's house. When I first saw the fire

truck, it was in 50 foot of me. I mean, you know, he was coming into the intersection. When I first saw the fire engine it was actually coming into the intersection.

Plaintiff stated that the fire truck did not slow down for the stop sign. He estimated its speed upon entering the intersection at "25, 30 miles per hour." He did not hear a siren on the truck nor did he see flashing lights. Plaintiff testified, "When I first saw [the fire truck] it was coming into my lane of traveling. . . . It was in the intersection. . . . After I saw the fire truck coming into my lane of travel, I applied brakes. My brakes took hold and the truck kept a-going and then I struck the side of the truck." Plaintiff did not see the fire truck sooner because his view was obstructed; "it's a blind intersection." He had no recollection of exactly where the collision occurred.

Defendants' evidence tends to show that on 29 January 1980, defendant Bullard was employed by defendant fire department as its driver. He was called out on a dumpster fire that morning and pulled the fire truck out of the station. Defendant Bullard testified, "There I turned on the lights, turned on the siren, and sat there [about] 60 seconds waiting to see if any of the volunteers were coming." He set the truck's siren on the "high-low frequency." Another siren on top of the station already was operating; "[i]t's just a roaring sound . . . that . . . can be heard at least three miles. . . ."

Defendant Bullard further testified that as he traveled from the station to the intersection of Rural Paved Road 1006 and Rural Paved Road 1826, his top speed was 15 miles per hour. He stated,

> When I got to a reasonable distance from the stop sign, I slowed down to look if anything was coming. . . . I reduced my speed to 10 miles an hour right there adjoining the stop sign. . . . I looked left at that point as I reached the stop sign. I looked right to make sure there was not nothing coming. And when I did not see anything, I proceeded on.

As he crossed the intersection, the collision occurred. The impact was the rear end of the truck, knocking it "sideways."

Richard Allen Strickland, then a volunteer fireman for defendant fire department, also testified for defendants. He stated

Williams v. Bethany Fire Dept.

that he heard the siren on top of the station and "went to the wreck" where he saw "the red light flashing on top of the truck." Donna Nunnery was in her yard at the corner of the intersection when the collision occurred. She testified that she heard the fire truck's siren "coming down the road toward my house, heard it go by my house, heard it going toward the intersection, I heard a loud bang, after that I heard the siren for another few seconds." David Royal, who was at the Bethany Grocery Store located at the intersection, saw the fire truck come up to the intersection with the lights flashing and the siren operating.

Plaintiff's second argument assigns as error the trial judge's decision to allow a jury "hearing" of a fire truck's siren at defendant's request. The judge described the "hearing" to the jury as follows:

> . . . [A]t this [time] the defendant is going to introduce into evidence . . . the sound of the siren on a fire truck. . . . The jury is going to be taken as a whole in a body to a location out here beside the courthouse on Person Street where you will stand on the sidewalk. The siren on the vehicle will be activated and the vehicle will proceed from the location where it is to a point equal—or to your location.

> Now, during this time, you are simply to listen, to observe the truck. This is not in any way intended to duplicate the conditions that existed at the time on—as they were on the 29th of January of 1980, but is simply to allow you the opportunity to hear the siren under the circumstances and the conditions that it will be presented here on Person Street.

The evidence was offered to show the audibility of a "high-low frequency" siren from a distance of not less than 1000 feet since, under G.S. 20-156(b) & -157(a), the driver of a vehicle on a highway must yield the right-of-way and clear any intersection by driving as near as possible to the curb when approached by "any police or fire department vehicles . . . giving a warning signal by appropriate light and by bell, siren, or exhaust whistle *audible under normal conditions from a distance not less than 1,000 feet.*" (Emphasis added.) The jury "hearing" occurred as the judge described it, and plaintiff objected to it repeatedly.

To be admissible in evidence, an experiment must satisfy this twofold requirement: (1) The experiment must be made under conditions substantially similar to those prevailing at the time of the occurrence involved in the action; and (2) the result of the experiment must have a legitimate tendency to prove or disprove an issue arising out of such occurrence.

*Mintz v. Atlantic Coast Line Railroad Co.*, 236 N.C. 109, 114-15, 72 S.E. 2d 38, 43 (1952). *See* 1 Stansbury's N.C. Evidence (Brandis rev. 1973) § 94, p. 304.

As the record in the present case shows, the jurors were left standing on a sidewalk for several minutes, anticipating seeing and hearing the fire truck as it proceeded down the street. The sounds of the truck were channeled along the street by the buildings thereon, and there were no obstructions between the fire truck and the jurors as it proceeded toward them. It is apparent that the conditions under which this demonstration was conducted were so different from the "blind intersection" of Rural Paved Road 1006 and Rural Paved Road 1826 that no "substantially similar" conditions existed.

Although the trial judge instructed the jury that the demonstration was not intended to duplicate the conditions at the time of the collision but was intended to demonstrate the audibility of a "high-low frequency" siren on Person Street, the demonstration nevertheless was highly prejudicial to plaintiff under these circumstances. Thus, the relevancy of the jury "hearing" of the "high-low frequency" siren was not established, and the trial judge erred in permitting it to occur. *See* 1 Stansbury's N.C. Evidence (Brandis rev. 1973) § 94, pp. 304-05.

We have carefully examined plaintiff's remaining arguments and find that they either are unlikely to recur at the new trial, or are without merit and do not warrant further discussion in this opinion.

For the reasons stated above, plaintiff is entitled to a

New trial.

Judges WELLS and BECTON concur.