J. FLOYD WILLIAMS AND WIFE, VARA BULLARD WILLIAMS v. BETHANY VOLUNTEER FIRE DEPARTMENT AND BENNY PLATO BULLARD

No. 327PA82

(Filed 11 January 1983)

1. Evidence § 18— rules governing experimental evidence—inapplicability to jury view of fire truck

The rules governing the admissibility of experiments were not applicable in determining whether the trial court acted properly in permitting the jury to view a fire truck and its flashing lights and to hear its siren.

2. Trial § 13— competency of jury view of fire truck—no abuse of discretion

In an action arising out of an intersection collision between plaintiff's automobile and defendant's fire truck, a jury view of the fire truck at the courthouse with its red lights flashing and its siren sounding was competent

(1) to illustrate the testimony of the witnesses concerning the appearance of the fire truck and its red flashing lights and the sound of its siren, and (2) as real evidence, and the trial court did not abuse its discretion in permitting the jury to see and hear the fire truck. G.S. 20-156(b); G.S. 20-157(a).

Justice CARLTON dissenting.

Chief Justice BRANCH joins in the dissenting opinion.

ON discretionary review of the decision of the Court of Appeals, 57 N.C. App. 114, 290 S.E. 2d 794 (1982), finding error in the judgment for defendants entered by *Clark, J.,* at the 2 February 1981 Session of Superior Court, CUMBERLAND County, and awarding a new trial to plaintiffs.

J. Floyd Williams commenced this action against defendants for damages suffered in a collision between his automobile and a fire truck owned by defendant Bethany Volunteer Fire Department and operated by defendant Bullard. Williams's wife, Vara, joined the action, alleging a claim for loss of consortium. Defendants answered, alleging contributory negligence and a counterclaim for damages to the fire truck.

Plaintiffs' evidence showed that the collision occurred at the intersection of rural paved roads 1006 and 1825 in Cumberland County, about eleven miles from Fayetteville. Floyd Williams was driving north on road 1006 as defendant Bullard was operating the fire truck in a westerly direction on road 1825. Traffic proceeding west on highway 1825 is required to stop at a stop sign before entering the intersection of the two roads, but in this instance the fire truck entered the intersection without stopping. Williams approached the intersection at about 42 m.p.h. and saw the fire truck when he was about seventy-five feet from the intersection. His view of road 1825 to the east was partially obscured by a house, trees, and a church located in the southeast quadrant of the intersection despite the fact that it was January and little warm-weather foliage was present. Although Williams applied his brakes, he could not avoid colliding with the back end of the truck. He had not heard any siren nor seen any flashing lights coming from the fire truck before the collision. Williams suffered personal injuries and damages to his automobile.

Defendants' evidence showed that Bullard had received a fire call. He got into the red fire truck, which was ten feet high, thirty

feet long, equipped with pumps, hoses, red lights, and siren. He activated the red flashing lights and siren. The siren was on "high-low frequency," making two sounds: "it goes up real loud and then back down, high-low." He proceeded west on road 1825 and it took five to ten seconds to travel to the intersection. As he approached the intersection, he reduced the truck's speed to about ten m.p.h. The lights and siren continued to function. He looked right and left, saw no approaching traffic, and proceeded into the intersection. Williams's car struck the left side of the truck at the rear wheels.

At the conclusion of defendants' testimony but before each side rested its case, motions were made to allow the jury to see the fire truck and its flashing lights and to hear its siren. Plaintiffs moved that the jury view be held at the intersection where the accident occurred, and defendants asked that it be done on Person Street outside the courthouse in Fayetteville. During the discussion, plaintiffs withdrew their motion. The trial judge then allowed defendants' motion for the jury view over plaintiffs' objection.

By its verdict the jury found that plaintiff Floyd Williams was not injured or damaged by the negligence of defendants and that Bethany Volunteer Fire Department was not damaged by the negligence of Floyd Williams.

On appeal to the Court of Appeals, plaintiffs argued that the trial judge committed prejudicial error in allowing defendants' motion for the jury view of the fire truck at the courthouse. The Court of Appeals found the granting of the motion to be error and remanded the case for a new trial. We allowed defendants' petition for discretionary review.

*Anderson, Broadfoot, Anderson, Johnson & Anderson, by Henry L. Anderson, Jr., for plaintiff appellees.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert W. Sumner and Robert M. Clay, for defendant appellants.*

MARTIN, Justice.

Only one question is presented to this Court: whether the Court of Appeals erred in holding that the trial judge committed prejudicial error in allowing defendants' motion for a jury view of

the fire truck. We conclude that the Court of Appeals did so err and, accordingly, reverse.

[1]　Although it did not expressly so state, the Court of Appeals evidently treated the jury view of the fire truck as an experiment. It applied the rules governing admissibility of experiments to the facts and found that the trial judge's ruling did not comply with these standards. In treating the jury view as an experiment, the Court of Appeals erred.

After allowing defendants' motion, the trial court instructed the jury:

> All right. Now, members of the jury, at this the defendant is going to introduce into evidence for your benefit in this case the sound of the siren on a fire truck. This is going to be done in this manner. The jury is going to be taken as a whole in a body to a location out here beside the courthouse on Person Street where you will stand on the sidewalk. The siren on the vehicle will be activated and the vehicle will proceed from the location where it is to a point equal — or to your location.
>
> Now, during this time, you are simply to listen, to observe the truck. This is not in any way intended to duplicate the conditions that existed at the time on — as they were on the 29th of January of 1980, but is simply to allow you the opportunity to hear the siren under the circumstances and the conditions that it will be presented here on Person Street.
>
> During this time that this is being presented to you, you are not to discuss it among yourselves or with others who may be there at the scene, but simply to listen and to observe the truck.

As to what then happened, the record shows:

> (The fire truck proceeded to approach the jury coming down Person Street with lights on and siren sounding. The truck passed the jury, after which the following proceedings were had.)
>
> COURT: All right. Jurors will return to the courtroom, please.

Neither counsel nor the court regarded the exhibition of the fire truck as an experiment. The rules governing the admissibility of experiments contained in *Mintz v. R.R.*, 236 N.C. 109, 72 S.E. 2d 38 (1952), and 1 Brandis on North Carolina Evidence § 94 (1982) are not applicable to the facts of this appeal. *See also State v. Mayhand*, 298 N.C. 418, 259 S.E. 2d 231 (1979).

[2]   The evidence placed before the jury by the jury view was relevant and competent for at least two reasons. First, it was admissible to illustrate the testimony of the witnesses. Illustrative evidence is competent to enable the jury to understand the oral testimony and to realize more completely its cogency and force. *Hunt v. Wooten*, 238 N.C. 42, 76 S.E. 2d 326 (1953). Various witnesses had attempted to describe the flashing red lights and the sound of the siren.

Defendant Bullard testified:

> The light on top of the cab is a round circular light, measuring about 12 inches across and it has four lights in it. It throws out a red light and twists around a circle.
>
>       . . . .
>
>       . . . The fire truck had flashing lights on it. It's got two in the grille or mounted on the front of the truck. It's got one mounted in the center of the cab that measures about 12 inches across. When I say "cab" I mean the front of the truck, the cab, the part you sit in. The light is located right in the center, it is on top of the cab and there's two on the tail end of the truck mounted on the sides.
>
>       . . . .
>
>       . . . The light on the top of the cab, when I turn it on, rotates around in a circle. It emits a red light and it goes around in a circle. . . .
>
>       . . . .
>
>       . . . I turned the siren on the high-low frequency. It's two sounds, it goes up real loud, then back down, high-low.

The witness Forney testified: "The red light was spinning, flashing, and the siren was screaming. The siren from the position that I was standing was very audible, and I was able to see the flashing light."

Donna Nunnery testified:

On the morning of January 29, 1980, I was at home doing the wash, depending at what point in time you mean, I was in and out of the house. While I was doing the wash that morning, I heard a fire truck's siren when I was outside hanging up clothes in my back yard. . . .

. . . It goes "woo, woo, woo."

David Royal testified: "On January 29, 1980, I was at the crossroads store, the Bethany Grocery Store. . . . The lights were flashing on the truck. . . . I heard the truck's siren as it approached the intersection."

Here a proper foundation was laid for the jury view because all the evidence indicated that the identical fire truck was available and that the flashing lights and siren were in the same condition as at the time of the wreck. *State v. Barfield,* 298 N.C. 306, 336, 259 S.E. 2d 510, 533 (1979), *cert. denied,* 448 U.S. 907, 65 L.Ed. 2d 1137 (1980); *Hunt v. Wooten, supra,* 238 N.C. 42, 76 S.E. 2d 326 (1953).

The evidence being illustrated by the jury view was relevant concerning the issue of whether the parties had complied with N.C.G.S. 20-156(b) and -157(a) (1978). These statutes require a motorist to yield the right-of-way to a fire truck that is giving a warning signal by appropriate light *and* by siren audible under normal conditions for a distance of not less than 1,000 feet. *Funeral Service v. Coach Lines,* 248 N.C. 146, 102 S.E. 2d 816 (1958). The evidence produced by the jury view was competent for consideration by the jury for the purpose of illustrating the testimony of the witnesses concerning the appearance of the fire truck, the red flashing lights, and the sound of the siren.

The trial court is not required to instruct the jury with respect to evidence admitted for illustrative purposes in the absence of a request to do so. *State v. Rupard,* 299 N.C. 515, 263 S.E. 2d 554 (1980); *State v. Cade,* 215 N.C. 393, 2 S.E. 2d 7 (1939). Here plaintiffs failed to so request, and they cannot now complain that they were hurt by the introduction of evidence whose thrust they may have been able to limit.

The jury view of the fire truck was also competent as real evidence. "Real evidence, in the strict sense of the term, is that

which is furnished by producing the thing itself for inspection instead of having it described by witnesses." 1 Brandis, *supra*, § 117. The fire truck played a direct, actual role in the collision which is the subject of this lawsuit. It is real evidence. *State v. Oliver*, 302 N.C. 28, 52-53, 274 S.E. 2d 183, 198-99 (1981); *State v. Harbison*, 293 N.C. 474, 238 S.E. 2d 449 (1977). Although the trial court did not make findings of fact with respect to the motion for jury view, the evidence fully supports the court's exercise of its discretion in determining the identity of the fire truck and the unchanged condition of the flashing lights and siren. *Id.*

Plaintiffs argue that the jury view of the fire truck was prejudicial to their case. This may be, but that does not make it error. It is not a valid ground for objection to evidence that it tends to prove the fact in question more conclusively when the object itself is exhibited to the jury instead of being left to the description by witnesses. *State v. Brooks*, 287 N.C. 392, 215 S.E. 2d 111 (1975). Evidence will not be excluded simply because it may have undue weight with the jury. *Id.* " 'Whatever the jury may learn through the ear from descriptions given by witnesses, they may learn directly through the eye [or ear] from the objects described.' " *Id.* at 407, 215 S.E. 2d at 122 (quoting 1 Stansbury's N.C. Evidence § 117 (Brandis rev. 1973) ).

This is true even though the object, such as a fire truck, is too bulky to be brought into the courtroom. It seems reasonable that the size of the courtroom should not necessarily limit the evidence to be presented to the jury. In *State v. Taylor*, 226 N.C. 286, 37 S.E. 2d 901 (1946) (a case decided before the adoption of N.C.G.S. 15A-1229 (1978) which codified jury view in criminal cases), this Court upheld the allowance of a jury view of an automobile in the courtyard. *See State v. Smith*, 13 N.C. App. 583, 186 S.E. 2d 600, *cert. denied*, 281 N.C. 157 (1972); *Toler v. Brink's, Inc.*, 1 N.C. App. 315, 161 S.E. 2d 208 (1968). The concept of a courtroom without walls is not new. 1 Brandis, *supra*, § 120. In fact, one remembers with some nostalgia presiding over hearings in the Superior Court of Clay County on the tree-shaded courthouse lawn in summer! Whether to allow the jury to leave the courthouse to see and hear the fire truck was a matter in the sound discretion of the trial judge. *Huff v. Thornton*, 287 N.C. 1, 213 S.E. 2d 198 (1975); *Paris v. Aggregates, Inc.*, 271 N.C. 471, 157 S.E. 2d 131 (1967). The exercise of discretion by the trial court in

granting or denying a jury view will not be disturbed on appeal in the absence of gross abuse. *Huff v. Thornton, supra; Paris v. Aggregates, Inc., supra;* 75 Am. Jur. 2d *Trial* § 74 (1974). We find no abuse of the court's discretion in allowing this jury to see and hear the fire truck.

Again we note that plaintiffs made no request for limiting instructions with respect to the jury view. Plaintiffs did request instructions on other matters, and at the conclusion of its charge, the court gave counsel another opportunity by inquiring, "Anything further, gentlemen?" Plaintiffs' counsel responded "no."

We find no prejudicial error in the granting of the motion for the jury view of the fire truck and, accordingly, reverse the decision of the Court of Appeals.

Reversed.

Justice CARLTON dissenting.

I respectfully dissent for the reasons stated by the Court of Appeals, 57 N.C. App. 114, 290 S.E. 2d 794 (1982). I disagree with the majority which holds that this was not an experiment. The truck was placed 1,000 feet down the city street so the jury could hear the siren from and during the truck's travel over that distance. The applicable statutes set out 1,000 feet as the minimum distance over which the siren must be heard. The activity at issue certainly appears to be an attempt to conduct an experiment and, as the Court of Appeals explains, the requirement that an experiment be made under conditions "substantially similar" to those prevailing at the time of the occurrence at issue clearly was not met here.

The majority concedes that this evidence may have been prejudicial to plaintiff and I certainly agree. It is, I think, a matter of common knowledge that the same sound emanating from the same source may be heard with a different intensity in different settings. Indeed, according to plaintiff's brief, an expert witness stated in a written report submitted in support of plaintiff's motion for a new trial that the "sound heard by the jury could have been *four or more times greater* than the acoustic in-

tensity that could have been heard by the driver of the vehicle that struck the fire truck."

I vote to affirm the Court of Appeals.

Chief Justice BRANCH joins in this dissenting opinion.