## STATE v. BRUCE TAYLOR.

(Filed 1 May, 1946.)

**1. Homicide § 16—**

Defendant's contention that he was on his own premises at the time of the homicide relates to his duty to retreat and avoid the difficulty and is material only on his plea of self-defense. Hence the burden of proof is on him.

**2. Homicide § 11—**

When defendant testifies that he was part owner of the filling station, the scene of the fatal encounter, but the State offers evidence that the filling station was a public filling station operated in the sole name of defendant's brother and that all licenses were issued in the brother's name and that defendant was a farmer living some distance away, defendant's contention that he was on his own premises is an open question for the jury on the conflicting evidence.

**3. Homicide § 27f—**

When the question of whether defendant was on his own premises at the time of the fatal encounter is an open question for the jury on conflicting evidence, the court, in the discharge of its duty to explain and apply the law to all material phases of the testimony, properly explains the law both upon the duty to retreat ordinarily prevailing, and the right of a person to stand his ground if without fault and on his own premises, and defendant's contention that the explanation of the duty to retreat was inapplicable to the evidence and prejudicial is without merit.

**4. Criminal Law § 50e (4)—Permitting jury to view material exhibit which could not be brought into courtroom held not error.**

The State's evidence tended to show that defendant shot deceased when deceased was standing at the door of his automobile and that one of the bullets creased the metal part of the door and cut a groove in the top of the door glass. Defendant's evidence was to the effect that he shot the deceased in self-defense as deceased was making an attack on him some distance from the car. *Held:* The automobile was an exhibit material to the State's case, and the court's action in permitting the jury to retire to the courtyard in custody of a deputy sheriff to examine the automobile, is not held for error, there being no suggestion of misconduct on the part of the officer or the jury and it not appearing that the judge or the defendant was absent at the time.

**5. Criminal Law §§ 50e (3), 81c—**

The fact that the officer having the jury in custody in conducting it to the courthouse lawn to view a material exhibit was also a witness for the State, is not sufficient, standing alone, to justify a new trial in the absence of evidence of some fact or circumstance tending to show misconduct on the part of the officer or the jury, but such practice is not approved.               ' .

APPEAL by defendant from *Carr, J.,* at November Term, 1945, of WAYNE. No error.

Criminal prosecution on bill of indictment which charges that defendant did kill and murder one Hubert Carraway, the charge · of murder in the first degree being waived by the solicitor.

All the testimony tends to show that on the night of 17 August, 1945, defendant's car stalled at his sister's home. He started to find help and met a car occupied by Hubert Carraway, David Eatman, George Mozingo, and a Negro called Lightning. Some difficulty arose in which Hubert Carraway and his companions assaulted defendant. Defendant's evidence tends to show that they accused him of reporting their still, that they struck him with a piece of iron, "beat him up" severely and threatened to kill him. He escaped and they pursued him to his sister's home where he escaped through the back door. Carraway then said they would get him before the next night.

The evidence for the State tends to show that on the next day, 18 August, about 5:00 p.m., Carraway, David Eatman, Marvin Carraway, George Mozingo, Lightning and another Negro called Badeye were on a two-door Ford coach going to Mount Olive. They stopped at a filling station operated by J. L. Taylor, brother of defendant, to get some beer. Having ascertained that no beer was available, they were in the act of getting back in the automobile when defendant came out of the station, approached Carraway, who was standing at the door of the automobile, punched him and said, "You are the s.o.b. that slapped me last night,

ain't you," and shot him two or three times. One bullet grazed the metal part of the door and one entered Carraway just below the shoulder blade on the left side and passed out of his body near his right nipple. Carraway fell in the foot of the car.

Testimony for defendant tends to show that defendant is part owner of the filling station and was there as part owner on 18 August. Having been told that Carraway and companions were looking for him he got a pistol from behind the counter and put it in his pocket for protection. About 5:00 o'clock he started to go to town. As he walked out the screen door he heard someone say, "There is the s.o.b., let's get him now." He then saw Carraway approaching with his companions following behind. Carraway picked up an armature and made a motion as if to strike him. Defendant said, "You had better not come on me with that," and reached for his gun "right quick." It caught in his pocket and fell to the ground. As defendant picked it up Carraway was in the act of hitting him with the armature and defendant shot. Carraway whirled around and again started to hit him, and defendant shot a second time. Carraway staggered off and defendant returned to the filling station. All this occurred some distance from the automobile.

There was evidence that defendant is a man of good reputation and that Carraway was generally reputed to be dangerous and violent.

It is admitted that Carraway died as a result of the gunshot wounds inflicted by defendant.

There was a verdict of guilty of murder in the second degree. The court pronounced judgment on the verdict and defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes, Moody, and Tucker for the State.*

*J. Faison Thomson, Rivers D. Johnson, and N. W. Outlaw for defendant, appellant.*

BARNHILL, J. A careful examination of the exceptions relating to the admission or exclusion of testimony fails to disclose any material error. No one of them presents any question of such moment as would seem to require discussion.

In its charge the court, on the defendant's plea of self-defense, instructed the jury as to the duty of one who is assaulted to retreat, explaining the law as to the absence of that duty when the person assaulted is without fault and on his own premises. Both the general rule and the exception were fairly explained.

But the defendant insists that he was on his own premises, that the doctrine of retreat had no application to any aspect of the testimony in this case, and that in instructing the jury that the duty to retreat in any

event rested on him, the court committed error. He does not challenge the correctness of the statement but contends that as the general rule was not applicable the more fully it was discussed the more harmful it became.

The record fails to sustain defendant's position in this respect. It does not appear that the solicitor admitted or conceded that the defendant was part owner of the filling station. On the contrary, the State developed testimony tending to show that this was a public filling station, that it was operated by J. L. Taylor, that a sign, "J. L. Taylor," was on the building, that the beer and other licenses were issued in the name of J. W. Taylor, and that defendant is a tenant farmer living some distance away.

Whether the defendant was or was not on his own premises at the time of the homicide was a fact material only on his plea of self-defense. On that issue the burden was on him. There was evidence of facts and circumstances as indicated which tended to impeach his statement and render it an open question for the jury to decide.

It was the duty of the court to explain and apply the law to all material phases of the testimony. In compliance with this requirement it explained under what conditions it would have been the duty of defendant to retreat and attempt to avoid the difficulty. In so doing it instructed the jury that the defendant, if without fault and on his own premises, was under no duty to retreat "for when he is . . . on his own premises he is deemed in law to have retreated as far as the law requires him to retreat." Thus the charge on the plea of self-defense, considered contextually and in the light of the conflicting phases of the testimony, was in accord with the decisions of this Court. Exceptions thereto cannot be sustained.

The other exceptions to the charge brought forward and discussed in defendant's brief are without merit.

During the trial the solicitor offered in evidence the automobile used by deceased on the day of the homicide and moved the court that the jury be permitted to view the exhibit which was then parked behind the courthouse. The motion was allowed and the jury was permitted to retire to the courtyard in the custody of Deputy Sheriff Precise for that purpose. The defendant excepted.

There was testimony that one of the bullets fired by defendant creased the metal part of the door and cut a groove in the top of the door glass of the automobile in question. This testimony, if true, tended strongly to corroborate the evidence offered by the State. The exhibit was therefore material to the State's case. It could not be produced in court. The court followed the only alternative, practical, common-sense course open to it. It directed that the jury retire and examine the automobile

10—226

to be identified by the witness who had given testimony concerning the markings. There is no suggestion of any misconduct on the part of the jury or the officer. Nor does it appear that either the judge or the defendant was absent at the time the automobile was inspected. Hence we are unable to perceive any reasonable objection to the procedure followed.

But the defendant insists that there is another phase of the occurrence which was highly prejudicial to him. The officer who was designated to conduct the jury to the courthouse lawn to view the exhibit was a witness for the State.

The practice of putting the jury in the custody of an officer who has actively investigated the evidence or has become a witness for the State is not to be approved. While, in the absence of evidence of some fact or circumstance tending to show misconduct on the part of the officer or the jury, we hesitate to make it alone the grounds for a new trial, we do stress the need for trial judges to be extremely careful to avoid such incidents.

However circumspect the officer and jurors may be when placed in such a situation, these occurrences always, as here, tend to bring the trial into disrepute and produce suspicion and criticism to which good men should not be subjected. *S. v. Hart, ante,* 200.

In reality this cause boiled down to a rather simple issue of fact. If the homicide occurred in the manner indicated by the testimony of the State, defendant is fortunate to have escaped prosecution for a capital felony. If it occurred as the testimony for defendant tends to show, the jury well might have returned a verdict of not guilty. It accepted the version of the State. Exceptions brought forward and discussed in defendant's brief fail to point out any substantial or prejudicial error. The judgment therefore must be affirmed.

No error.