STATE OF NORTH CAROLINA v. DEREK HARRISON METTRICK AND CLAUDE DALTON VICKERS

No. 8023SC1151

(Filed 6 October 1981)

1. **Constitutional Law § 32; Criminal Law § 101.4— right to impartial jury—contact with State's witnesses**

   Where the State's two principal witnesses, a sheriff and deputy sheriff, had been transporting the jury on bus trips from one county to another county which took approximately an hour and forty-five minutes, prejudice to the defendant was conclusively presumed and the conduct of the trial violated the defendant's Fourteenth Amendment right to trial by a fair and impartial jury.

2. **Criminal Law § 66.14— pretrial identification procedure suggestive—no basis for independent in-court identification**

   Where a pretrial identification procedure, a one-on-one confrontation, was considered inherently suggestive, and there was no basis in the record to find the in-court identification was of independent origin, the trial court erred in so finding.

3. **Conspiracy § 5.1; Criminal Law § 73— hearsay—conspiracy over**

   A witness's testimony that one defendant identified the other defendant as a participant in a conspiracy was hearsay in its classic form as the codefendant made the statement after he was arrested and once the conspiracy was over.

4. **Searches and Seizures § 15— standing to object to search of airplane**

   Defendant could not object to the admission of evidence taken as a result of searches conducted in and around an airplane where the record showed neither that defendant was present when the airplane was searched nor that he had any protected interest in the airplane.

1

5. **Conspiracy § 5.1; Criminal Law § 74.2— extrajudicial statements of codefendant—inadmissibility against defendant—failure to give limiting instruction—error**

Extrajudicial statements of a testifying codefendant made to officers once he was arrested and after the conspiracy was completed should not have been admitted into evidence as against the other defendant and defendant was entitled to an instruction that codefendant's statements were admissible only against codefendant and could not be considered against defendant.

6. **Narcotics § 4— conspiracy to possess and sell marijuana—sufficiency of the evidence**

Testimony about codefendant's delivery of marijuana to Ashe County Airport coupled with identification testimony that defendant was at the airplane when the marijuana was unloaded is sufficient to overrule defendant's motion for nonsuit on the drug conspiracy charge.

7. **Narcotics § 4— nonsuit—sufficiency of the evidence to overrule motion**

Where there is evidence from which the jury could find that defendant flew his airplane to South America and picked up 5,000 to 10,000 pounds of marijuana, that he later flew to Ashe County Airport where he ordered his crew to open the cargo door so that the marijuana could be unloaded into waiting trucks, and that he then vacuumed the airplane to remove evidence of marijuana, this is sufficient to uphold the denial of defendant's motion for nonsuit on charges of felonious conspiracy to possess and sell marijuana and felonious possession and delivery of marijuana.

8. **Searches and Seizures § 13— search and seizure by consent**

Where defendant consented to the search of his aircraft and during the search contraband was found in plain view, seizure of the contraband was not unconstitutional.

Judge MARTIN (Robert M.) dissenting.

APPEAL by defendants from *Washington, Judge.* Judgment entered 30 May 1980, ASHE County Superior Court. Heard in the Court of Appeals 3 April 1981.

On 16 January 1980, a DC-6 airplane piloted by the defendant, Derek Harrison Mettrick, and crewed by James Cannin and James Kent, landed at the Ashe County Airport. The plane's cargo was unloaded into two trucks which immediately departed the airport. On 17 January 1980, defendant Mettrick and his crew were arrested. Subsequently, the defendant, Claude Dalton Vickers and his brother Hubert Garley Vickers were also arrested. A total of less than five grams of marijuana seeds, stems, and other fragments were found by law enforcement officers in or about the airplane. The only evidence as to the nature and con-

tent of the airplane's cargo were the statements made by Mettrick to law enforcement officers in the absence of Claude Vickers that the airplane was loaded with 5,000 to 10,000 pounds of marijuana.

Mettrick was indicted and convicted of conspiracy to feloniously sell or deliver marijuana, conspiracy to feloniously possess marijuana, felonious possession of marijuana, and felonious delivery of marijuana.[1] Claude Vickers was indicted and convicted of conspiracy to feloniously sell or deliver marijuana, conspiracy to feloniously possess marijuana, and felonious possession of marijuana.

Hubert Vickers was also indicted on conspiracy charges, but the State elected to try him along with Mettrick and Claude Vickers for being an accessory after the fact to felonious delivery and possession of marijuana. Hubert Vickers' charges were dismissed at the close of the State's evidence.

Prior to trial, the court ordered that a special venire of jurors be drawn from another county for these cases which had been consolidated for trial over the objections of the defendants. Two of the State's principal witnesses, Sheriff Richard Waddell and Deputy Sheriff J. D. Parsons, were responsible for transporting the jurors during the first two days of trial. The first issue raised by defendants is whether the trial court should have granted a mistrial on the basis of the jurors' contact with these two State's witnesses. Numerous other issues are raised on appeal[2] dealing primarily with evidentiary rulings by the court, including the court's admission of in-court identifications by various State witnesses, the admission of statements by Mettrick, and the admissibility of the seized marijuana seeds. A number of issues are also raised concerning the court's charge to the jury. Because we hold, on the facts of this case, that it was inherently prejudicial for two principal State's witnesses to transport the jury, we address only the issues that are likely to be raised at the new trial.

1. The members of Mettrick's crew were charged with the same offenses but those charges were subsequently dismissed by the State.

2. In his 112-page brief, Vickers brings forward 25 assignments of error; Mettrick brings forward 11 assignments of error in his separate brief.

*Vannoy & Reeves, by Wade E. Vannoy, Jr., for defendant-appellant Mettrick.*

*Moore & Willardson, by Larry S. Moore and John S. Willardson, for defendant-appellant Vickers.*

*Attorney General Edmisten, by Associate Attorney Steven F. Bryant and Assistant Attorney General Henry T. Rosser, for the State.*

BECTON, Judge.

METTRICK AND VICKERS' FIRST ASSIGNMENT OF ERROR

I

[1] Because of pre-trial publicity, the trial court ordered a special venire of jurors drawn from Caldwell County for defendants' trial in Ashe County. Sheriff Waddell and Deputy Sheriff Parsons transported the prospective jurors in two activity buses from Caldwell County to Ashe County on 19 May 1980, the opening day of trial. Parsons also transported the jurors to lunch that day. After the jury was selected on the afternoon of 19 May 1980, Parsons drove one of the buses that made the return trip to Caldwell County. On 20 May 1980, Sheriff Waddell transported eleven of the fourteen chosen jurors and alternates from Caldwell County to Ashe County. No one was present on any of the bus trips, which take approximately an hour and forty-five minutes, except the jurors and the named officers.

Shortly after the opening of court on 20 May 1980, the court learned for the first time that these two principal state witnesses had been transporting the jury. Each of the defendants made timely motions for a mistrial, whereupon the court re-opened voir dire. Each juror stated that neither the sheriff nor his deputy mentioned the case and that the fact that the sheriff and his deputy would be testifying would not influence his or her ability to render an impartial decision.

In arguing that the trial court committed prejudicial error, the defendants rely on *Turner v. Louisiana,* 379 U.S. 466, 13 L.Ed. 2d 424, 85 S.Ct. 546 (1965). We believe the *Turner* case is dispositive of this issue. In *Turner,* the United States Supreme Court reversed the defendant's conviction of murder when the un-

controverted evidence showed that during the trial, two deputy sheriffs, who were the two principal prosecution witnesses, were in continual and intimate association with the jurors during the entire trial. The Supreme Court held that the conduct of the trial violated the defendant's Fourteenth Amendment right to trial by a fair and impartial jury. The Supreme Court further recognized that jurors do not shed their natural inclinations and predilections once they enter the courthouse; that jurors are a part of all that they have met; and that jurors are likely to give greater credence to those who have been their custodians than to other witnesses. Specifically, the Court stated:

> "Any judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere." *Frank v. Mangum*, 237 U.S. 309 at 349, 59 L.Ed. 969 at 980, 35 S.Ct. 582 (Holmes, J., dissenting). . . .
>
> . . . [T]he credibility which the jury attached to the testimony of these two key witnesses must inevitably have determined whether [defendant] was to be sent to his death. . . . [T]he potentialities of what went on outside the courtroom during the three days of the trial may well have made these courtroom proceedings little more than a hollow formality. [Citation omitted.]
>
> It is true that at the time they testified in open court Rispone and Simmons told the trial judge that they had not talked to the jurors about the case itself. But there is nothing to show what the two deputies discussed in their conversations with the jurors thereafter. And even if it could be assumed that the deputies never did discuss the case directly with any member of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution. . . .
>
> . . . [T]he role that Simmons and Rispone played as deputies made the association even more prejudicial. For the relationship was one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial.

379 U.S. at 472-74, 13 L.Ed. 2d at 429-30, 85 S.Ct. at 549-50.

The North Carolina Supreme Court's decision in *State v. Macon*, 276 N.C. 466, 173 S.E. 2d 286 (1970) also supports the conclusion we reach. In *Macon*, our Supreme Court said:

> We are in full accord with the sound principles of constitutional law enunciated in the *Turner* case. The facts in the case before us, however, do not invoke their application. . . . Here, the deputies were not in the presence of the jurors outside the courtroom, had no communication at any time with them, and had no custodial authority over them. The exposure of the jury to these bailiffs was brief, incidental, and without legal significance. . . .

> Since the State's witnesses here had no custodial authority over the jury, *Turner* does not apply. Even so, trial judges should not overlook the significance of that decision. Simply stated, it holds that a State's witness is disqualified to act as *custodian* or *officer in charge* of the jury in a criminal case. We said as much in *State v. Taylor* [226 N.C. 286, 37 S.E. 2d 901 (1946)]. Under such circumstances, prejudice is conclusively presumed.

276 N.C. at 473, 173 S.E. 2d at 290.

In this case, Sheriff Waddell was the most frequently called as well as the most crucial State's witness. He testified on eleven separate occasions, five times in the presence of the jury. He was alone with the jurors in a bus, with him driving, for not less than three and one-half hours. The same can be said of Deputy Parsons, another principal witness, who testified three times in the presence of the jury. The jurors were in these law enforcement officials' custody and keeping outside the courtroom for substantial periods of time. The jurors' lives, safety and comfort were in these officers' hands. Assuming that the case was not discussed or even mentioned during the whole time, one would have to be blind to human nature to believe that the jurors' intimate association with Sheriff Waddell and Deputy Parsons did not enhance these witnesses' credibility.

> However circumspect the officer and jurors may be when placed in such a situation, the occurrences always, as here, tend to bring the trial into disrepute and produce suspicion and criticism to which good men should not be subjected.

*State v. Taylor,* 226 N.C. at 290, 37 S.E. 2d at 903.

Because prejudice is *inherent* under *Turner* and *conclusively presumed* under *Macon,* we do not reach defendants' argument that the trial court erred in denying their motions to sequester the jury during the special voir dire. Suffice to say, both defendants are entitled to a new trial for the reasons set forth above.

VICKERS' REMAINING ASSIGNMENTS OF ERROR

II

Vickers next assigns as error the court's admission of identification testimony by three witnesses without conducting voir dire examinations to ascertain whether the in-court identifications were tainted by out-of-court proceedings. Vickers lodged a general objection and did not specifically request a voir dire hearing. While the "better procedure dictates that the trial judge, even upon a general objection only, should conduct a voir dire in the absence of the jury, find facts, and thereupon determine the admissibility of in-court identification testimony," *State v. Stepney,* 280 N.C. 306, 314, 185 S.E. 2d 844, 850 (1972), we need not reach the merits of this issue since Vickers can request a voir dire at the re-trial, and the court can make the proper findings.

III

[2] Vickers also contends that the identification procedures employed to get the fourth identification witness, Onley Burgess, to identify him were inherently suggestive, conducive to mistaken identification and violative of his constitutional rights to due process.

A voir dire examination *was* conducted by the court to determine the competency of Onley Burgess' in-court identification of Vickers. On voir dire, Onley Burgess testified (1) that, except for seeing Vickers in court, he had seen Vickers on only two prior occasions—once at the Ashe County Airport on 16 May 1980 and once at Vickers' place of business in Wilkes County on 18 or 19 May, 1980; (2) that Sheriff Waddell drove him from Ashe County to Vickers' place of business in Wilkes County and asked him (Burgess) "to see if [he] could identify the man that drove the black truck away [from the airport];" (3) that "the main purpose of [the sheriff] taking me down there was to identify the

defendants," and (4) that he, Burgess, was in Vickers' store for fifteen to twenty seconds and that a large individual, whom he later identified as Claude Vickers, was reading a newspaper which, during part of the time Burgess was in the store, covered Vickers' face. Sheriff Waddell gave similar testimony: "I asked Burgess 'if he would care to go into a business known as 421 Produce and buy an apple or a drink and see if he could see anyone he recognized as being at the airport.'" Sheriff Waddell also testified that the only other person in the store other than Burgess was a lady.

On the basis of this testimony, the trial court found facts and concluded that the pre-trial identification procedure "was not so unnecessarily suggestive and conducive to irreparably mistaken identification as to violate" Vickers' rights to due process of law.

"[A] one-on-one confrontation generally is thought to present greater risk of mistaken identification than a line-up." [Citations omitted.] *Moore v. Illinois*, 434 U.S. 220, 229, 54 L.Ed. 2d 424, 434, 98 S.Ct. 458, 465 (1977). Consistent with that observation by the United States Supreme Court, "[o]ur courts have widely condemned the practice of showing suspects singly to persons for the purpose of identification." [Citations omitted.] *State v. Yancey*, 291 N.C. 656, 661, 231 S.E. 2d 637, 640 (1976). We hold that the one-on-one confrontation in this case was inherently suggestive. We have not completed our inquiry, however, because Burgess sought to give in-court identification testimony to which Vickers objected.

> The overwhelming weight of authority is that the in-court identification of a witness who took part in an illegal pretrial confrontation must be excluded unless it is first determined by the trial judge on clear and convincing evidence that the in-court identification is of independent origin and thus not tainted by the illegal pretrial identification procedure. [Citations omitted.]

291 N.C. at 660, 231 S.E. 2d at 640. We must determine if there was clear and convincing evidence from which the trial court could have concluded that Burgess' purported in-court identification of Vickers was of independent origin.

In *State v. Yancey*, our Supreme Court said "[t]he United States Supreme Court case of *Neil v. Biggers*, 409 U.S. 188, 34

L.Ed. 2d 401, 93 S.Ct. 375 [1972], reconfirmed earlier holdings that even if a pre-trial confrontation is suggestive, due process is not violated by the admission of identification evidence when the total circumstances show the identification to be reliable." 291 N.C. at 661, 231 S.E. 2d at 641. Since "reliability is the linchpin in determining the admissibility of identification testimony. . .," *Manson v. Braithwaite*, 432 U.S. 98, 114, 53 L.Ed. 2d 140, 154, 97 S.Ct. 2243, 2253 (1977), we consider the factors set out in *Biggers* in determining the reliability of Burgess' testimony. The factors set forth in *Biggers* include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. at 199, 34 L.Ed. 2d at 411, 93 S.Ct. at 382.

We do not find the factors of reliability present in this case. The record is devoid of evidence to support the court's finding that Burgess observed Vickers "within a distance of one hundred feet." Moreover, Burgess never answered the specific question: "Is your identification here in court today based" on what you saw at the scene or on what happened at the pre-trial show-up? Burgess first testified that Claude Vickers weighed 300 pounds, that his main purpose for going to Vickers' store was to see if he could recognize Vickers, and that he recognized Vickers "by his size" since "he was reading a paper as I entered and I caught a view of his face." Then the following transpired:

Q. Is your identification here in court today based on the fact that you saw him there at what you have described as his place of business or as being the man at the airport — or because you are positive that you saw him at the airport?

Q. Do you understand my question; was it clear?

A. Very very little doubt but it was the one and the same.

MR. ASHBURN: All right, that is all of the questions I have.

CROSS EXAMINATION By Mr. Moore on Voir Dire:

The last answer that I gave to the district attorney was that there was very little doubt as to the identification of this man. You change the location and him sitting down and him standing up at the airport, there is some but very little doubt. You can always have some doubt in different dress and so forth.

Again, Burgess never gave the basis for his in-court testimony. Accordingly, we conclude that the findings and conclusions and order of the trial court following the voir dire examination are not supported by clear and convincing evidence so as to render the in-court identification testimony admissible.

## IV

[3] Vickers next assigns as error the trial court's admission of testimony concerning a pre-trial show-up by police captain Gene Goss. Goss was allowed to testify that Mettrick, at one time, identified Vickers as a participant in the conspiracy. Vickers contends (1) that the pre-trial identification procedure, whereby Captain Goss allowed Mettrick to view Vickers through a one-way mirror, was inherently suggestive—a Fourteenth Amendment claim; (2) that a voir dire examination should have been conducted to determine if Vickers' Sixth Amendment right to counsel had been violated; and (3) that the State's failure to obtain a non-testimonial identification order under G.S. 15A-273, et seq. required the exclusion of Goss' testimony. First, Vickers did not request a voir dire hearing on this issue. Second, it is not necessary to reach the merits of Vickers' Sixth and Fourteenth Amendment claims nor is it necessary to reach Vickers' claims under G.S. 15A-273 because Mettrick did not himself make an in-court identification. Because Goss was testifying about what Mettrick said, Vickers' objection is misplaced.

The testimony of Goss, nevertheless, should have been excluded. This Court notes, *sua sponte*, that the conspiracy was over, Mettrick having already been placed under arrest, at the time Mettrick identified Vickers as the man at the airport. The conspiracy being over, and the testimony of Goss not fitting into any of the exceptions to the hearsay rule, we conclude that Goss' testimony about what Mettrick said was hearsay, in its classic form, and was inadmissible.

V

[4]  Vickers also objects to the admission of evidence taken as a result of searches conducted in and around the airplane. He contends that the searches were conducted without search warrants and without the consent of the defendant, Mettrick. To contest a search and seizure alleged to have been conducted in violation of the Fourth Amendment, Vickers must show that he had an expectation of privacy in the area searched because the right is personal and cannot be asserted by others. *Rawlings v. Kentucky,* 448 U.S. 98, 65 L.Ed. 2d 633, 100 S.Ct. 2556 (1980); *Rakas v. Illinois,* 439 U.S. 128, 58 L.Ed. 2d 387, 99 S.Ct. 421, *reh. denied* 439 U.S. 1122, 59 L.Ed. 2d 83, 99 S.Ct. 1035 (1978); *Brown v. United States,* 411 U.S. 223, 36 L.Ed. 2d 208, 93 S.Ct. 1565 (1973); *State v. Cooke,* 54 N.C. App. 33 (1981); *State v. Jordan,* 40 N.C. App. 412, 252 S.E. 2d 857 (1979).

Specifically, in *Brown v. United States,* the Supreme Court stated:

> [I]t is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure.

411 U.S. at 229, 36 L.Ed. 2d at 214, 93 S.Ct. at 1569. The record does not show that Vickers was present when the airplane was searched nor does it show that he had any protected interest in the airplane. Moreover, the test set forth in *Brown v. United States* has been applied in *State v. Ervin,* 38 N.C. App. 261, 248 S.E. 2d 91 (1978), which held that a passenger in an automobile has no standing to contest a search of an automobile in which marijuana was being transported, and in *State v. Jordan,* which held that a driver had no reasonable expectation of privacy in the pocketbook of a passenger in his car and therefore had no standing to object to the search.

## VI

Vickers next assigns as error the trial court's admission of the extra-judicial statement of his co-defendant, Mettrick, and the trial court's failure to instruct the jury that Mettrick's extra-judicial statements could be considered against Mettrick but could not be considered as evidence against Vickers. Over objections, the trial court admitted testimony from law enforcement officers as to statements made to them by Mettrick. Indeed, the only evidence in the record as to the nature and content of the airplane's cargo were the statements made by Mettrick to these law enforcement officials. Vickers was not present at any time when Mettrick made the various statements to law enforcement officials.

The general rule, set forth in *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968), and approved by our court in *State v. Slate*, 38 N.C. App. 209, 212, 247 S.E. 2d 430, 432-33 (1978), was stated as follows:

> When two defendants are jointly tried, the extra-judicial confession of one may be received in evidence over the objection of the other *only when* the trial court instructs the jury that the confession is admitted as evidence against the defendant who made it but is not evidence and may not be considered by the jury in any way in determining the charges against his codefendant. *State v. Lynch*, 266 N.C. 584, 146 S.E. 2d 677 (1966); *State v. Bennett*, 237 N.C. 749, 76 S.E. 2d 42 (1953); 2 Stansbury's N.C. Evidence, § 188 (Brandis rev. 1973). Failure to give the required instruction will necessitate a new trial in Slate's case. . . .

We are not unmindful of the fact that Mettrick testified in his own defense and did not in any way implicate Vickers. Consequently, Vickers' rights under the confrontation clause of the Sixth Amendment to the Constitution were not violated. The admission against Vickers, however,

> remained a violation of long established principles of law controlling in this jurisdiction. As to [Vickers], the extra-judicial statement of [Mettrick] was inadmissible hearsay. The extra-judicial statement of [Mettrick] did not become exceptionally admissible as corroborative evidence solely by virtue of the fact that [Mettrick] took the stand and testified.

38 N.C. App. at 212, 247 S.E. 2d at 432.

We are also cognizant that the rules regarding admissibility of statements made by co-conspirators vary from rules regarding statements of co-defendants in non-conspiracy cases.

> According to the general rule, when the State has introduced *prima facie* evidence of a conspiracy, the acts and declarations of each party to it in furtherance of its objectives are admissible against the other members *regardless* of their presence or absence at the time the acts and declarations were done or uttered. [Citations omitted.]

*State v. Tilley*, 292 N.C. 132, 138, 232 S.E. 2d 433, 438 (1977). The ordinary rules relating to conspiracy cases do not apply in this case because the conspiracy was over at the time Mettrick made his extra-judicial statements. Success or failure or abandonment terminates a conspiracy. *Krulewitch v. United States*, 336 U.S. 440, 93 L.Ed. 790, 69 S.Ct. 716 (1949). Here, the cargo had been delivered, the airplane had been locked, Mettrick had been in Ashe County a day and had been questioned by law enforcement officers.

> Before the acts or declarations of one conspirator can be considered as evidence against his co-conspirators, there must be a showing that "(1) a conspiracy existed; (2) the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) *while it was active*, that is, after it was formed and before it ended." [Citation omitted.]

292 N.C. at 138, 232 S.E. 2d at 438. (Emphasis added.)

On the facts of this case, the ordinary rules governing hearsay evidence control, and Vickers was entitled to an instruction that Mettrick's statements were admissible only against Mettrick and could not be considered against Vickers.

## VII

[6] Vickers also argues that his motion for nonsuit should have been allowed. In ruling on Vickers' motion for nonsuit, all the evidence, direct and circumstantial, is considered in the light most favorable to the State. Moreover, the State is entitled to have all contradictions in testimony resolved, and all reasonable inferences made in its favor, in determining whether there is

substantial evidence of the elements of the offense charged. *State v. Jones*, 47 N.C. App. 554, 268 S.E. 2d 6 (1980); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976), 4 Strong, N.C. Index 3d, Criminal Law, § 104, p. 541. Testimony about Mettrick's delivery of marijuana to Ashe County Airport coupled with identification testimony that Vickers was at the airplane when the marijuana was unloaded is sufficient to submit this drug conspiracy case to the jury.

## VIII

We have carefully reviewed Vickers' several remaining procedural and evidentiary assignments of error and find no prejudicial error. Moreover, as Vickers' ten additional assignments of error relate to the court's charge to the jury, we do not reach the issues presented therein.

METTRICK'S REMAINING ASSIGNMENTS OF ERROR

## IX

[7] Mettrick contends that all of his statements[3] are exculpatory or establish a complete defense entitling him to a nonsuit. We do not agree.

There is evidence from which the jury could find that Mettrick flew his airplane to South America and picked up 5,000 to 10,000 pounds of marijuana, that he later flew to Ashe County Airport where he ordered his crew to open the cargo door so that the marijuana could be unloaded into waiting trucks, and that he then vacuumed the airplane to remove evidence of marijuana. This evidence and all the reasonable inferences therefrom, when considered in the light most favorable to the State, is sufficient to uphold the denial of Mettrick's motion for nonsuit.

Additionally, Mettrick's testimony, corroborated by Florida law enforcement officials, concerning the purpose of transporting

---

3. Mettrick first said there was no marijuana on the airplane and that he had flown vegetables to Wisconsin; next, he said the presence of marijuana seeds in the airplane could be explained by the fact that it had been purchased in the recent past from a foreign company; and next he said he was working for and transporting marijuana for Florida law enforcement officers who had arranged to apprehend members of a drug ring in Alabama, his original destination. Mettrick also said that he was forced to fly to Ashe County by a hijacker.

the marijuana is no defense to possession and delivery of marijuana in North Carolina.

## X

[8] Mettrick next contends the court erred in "admitting testimony of searches and in allowing the products of these searches into evidence." From the record we find evidence that Sheriff Waddell entered the aircraft on the morning of 17 January 1980 with the consent of Mettrick; that upon entry into the cargo compartment, Sheriff Waddell smelled marijuana and then saw several marijuana seeds on the floor. Since the Sheriff was lawfully in the aircraft, seizure without a warrant of contraband in plain view was not unconstitutional. *State v. Legette*, 292 N.C. 44, 55, 231 S.E. 2d 896, 902 (1977). There is also evidence that the vacuuming of the airplane on 18 January 1980 was with Mettrick's consent. The trial court's findings and conclusions on the matters raised by this assignment of error are supported by competent and substantial evidence of record. When supported by evidence, the findings and conclusions of the trial judge on voir dire are binding on the appellate courts. *State v. Phillips*, 37 N.C. App. 202, 204, 245 S.E. 2d 587, 588 (1978).

## XI

We have carefully reviewed Mettrick's remaining procedural and evidentiary assignments of error and find no prejudicial error. We find it unnecessary to reach Mettrick's assignments of error relating to the court's charge to the jury.

## XII

Having determined that it was inherently prejudicial for the two principal prosecution witnesses to transport the jurors in this case and having addressed the issues that are likely to be raised at the new trial, we reverse the convictions and order a new trial not inconsistent with this opinion.

New trial.

Judge WHICHARD concurs.

Judge MARTIN (Robert M.) dissents.

Judge MARTIN (Robert M.), dissenting.

The majority has determined that it was inherently prejudicial for the two principal prosecution witnesses to transport the jurors in this case and ordered a new trial. They state that *Turner v. Louisiana*, 379 U.S. 466, 13 L.Ed. 424, 85 S.Ct. 546 (1965) is dispositive of the issue and that *State v. Macon*, 276 N.C. 466, 173 S.E. 2d 286 (1970), supports the conclusion they reach.

In *Macon* the Court acknowledged they were in full accord with the sound principles of constitutional law enunciated in the *Turner* case. However, they found the facts in the *Macon* case did not invoke their application.

In distinguishing *Turner v. Louisiana, supra*, the Court stated:

> "We are in full accord with the sound principles of constitutional law enunciated in the *Turner* case. The facts in the case before us, however, do not invoke their application. In *Turner* the jury was sequestered — not so here. There, the deputies involved were 'in actual charge of the jury.' Here, they were only court officers or bailiffs. There the deputies were in continuous and intimate association with the jurors, eating with them, conversing with them, and doing errands for them throughout a three-day trial. Here, the deputies were not in the presence of the jurors outside the courtroom, had no communication at any time with them, and had no custodial authority over them. The exposure of the jury to these bailiffs was brief, incidental, and without legal significance. Hence, defendant not only fails to show *actual prejudice* — he fails to show circumstances affording any reasonable ground upon which to attack the fairness of the trial or the integrity of the verdict."

*State v. Macon, supra* at 473, 173 S.E. 2d 290.

In the record in the case *sub judice* it was stipulated that thirty-eight jurors were called from Caldwell County. Sheriff Waddell, of Ashe County, was informed that drivers from the school system were unavailable to drive the activity buses. After finding that Lt. J. D. Parsons and himself were the only qualified drivers in his department, Waddell and Parsons drove the two buses with the prospective jurors from Caldwell County to Ashe

County on May 19, 1980. Parsons also drove the jurors to lunch that day. After the jury was selected, Parsons drove one of the buses that made the return trip to Caldwell County. On May 20, 1980, Sheriff Waddell transported the jurors back to Ashe County. The trip between Caldwell County and Ashe County was one hour and forty-five minutes. The District Attorney had announced that Waddell and Parsons would be called as witnesses for the state. These facts were made known to the trial court on the morning of May 20, 1980.

The defendants moved for a mistrial and the trial court reopened *voir dire* on May 20, 1980; this being after the jury had been empaneled but before the presentation of any evidence.

At the special *voir dire* hearing, the jurors were questioned by the District Attorney, counsel for the defendants, and the trial court. The jurors all agreed that neither the Sheriff nor his deputies mentioned the case nor would the fact that Waddell and Parsons testifying influence their ability to render an impartial decision.

On 20 May 1981 the trial court made findings of fact which included that the motions for a mistrial were made before any evidence was presented, that none of the jurors had previously known the sheriff or his deputies, that many of the jurors did not hear anything that was said by the officers, that Sheriff Waddell was attempting to provide transportation in the fulfillment of his duties, and that the empaneled jurors had previously been instructed not to discuss the case with anyone. Based on these findings the trial court concluded that the defendants had not been prejudiced and the motions for mistrial were denied. It should be noted that from 20 May 1981 until the conclusion of the trial on 30 May 1981, there is no evidence of any out-of-court contact between these officers and members of the jury panel.

In *State v. Hart*, 226 N.C. 200, 203, 37 S.E. 2d 487, 489 (1946), the Court held:

"The decisions by the various courts have not been in accord, but we are now of the opinion that the weight of authority is to the effect that an officer is not necessarily disqualified from acting as custodian of a jury in a criminal case because he happens to be a witness in the case. It is our opinion, and

we so hold, that actual prejudice must be shown before the result of the trial can be, as a matter of right, disturbed. . . . [T]he findings of the trial judge upon the evidence and facts are conclusive and not reviewable."

In my opinion, this case does not present circumstances in which prejudice will be conclusively presumed under the principles of *Turner v. Louisiana, supra,* but rather in which prejudice must be shown under the principles of *State v. Hart, supra.*